```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                       NASHVILLE DIVISION
```

BRIDGEPORT MUSIC, INC., et al., )
                                )
    Plaintiffs              )
                                )
v.                              )     No. 3:01-0706
                                )     Judge Campbell/Brown
WB MUSIC CORP., et al.,         )
                                )
    Defendants              )

**TO: THE HONORABLE TODD J. CAMPBELL**

### REPORT AND RECOMMENDATION

      Presently pending before the Magistrate Judge for a report and recommendation is the Defendant Universal-Polygram International Publishing, Inc. (UPIP) motion for attorneys' fees in the amount of $65,353.05 and nontaxable costs in the amount of $1,878.48. In connection with their successful defense of Bridgeport's appeal of the Court's earlier award of attorneys' fees to UPIP (*Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592).

      The parties have thoroughly briefed this matter (Docket Entries 517, 518, 519, 525). Including the various exhibits, the parties' briefs encompass some two inches of printed material.

      After carefully considering this voluminous record and the *Fogerty* factors, the Magistrate Judge recommends that the motion be granted in part and that UPIP be awarded attorneys' fees in the amount of $22,660 and nontaxable costs in the amount of $1,878.48.

**BACKGROUND**

This is yet another chapter in the continuing battle over attorneys' fees in a case which was dismissed on the merits by the District Judge on November 7, 2002 (Docket Entry 393). The District Judge subsequently awarded UPIP attorneys' fees in the amount of $79,340.94, and $3,409.35 in costs (Docket Entry 440). Bridgeport appealed both the dismissal and the award of fees and costs. The Sixth Circuit affirmed the dismissal, finding that there was no evidence to support the claim, but in a split decision reversed the District Judge's award of fees and costs and remanded the matter for further consideration of that issue. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir 2004).

Upon remand, the District Court reconsidered the issue of attorneys' fees and issued a new order in compliance with the Sixth Circuit mandate. This new order by the District Court reimposed the award of $79,340.94 in attorneys' fees and costs of $3,409.35 (Docket Entries 496, 509). Bridgeport subsequently appealed that order on the single issue that the District Court had erred in awarding attorneys' fees and costs. The Sixth Circuit, on March 25, 2008, affirmed the decision of the District Court. *Bridgeport Music, Inc. v. WB Music, Corp.*, 520 F.3d 588 (6th Cir. 2008). The Sixth Circuit declined to vary from its normal practice of having attorneys' fees for the appeal be initially decided by the District Court.

2

Accordingly, the matter is now back before the Magistrate Judge for a report and recommendation on the sole issue of whether UPIP is entitled to an award in some amount for attorneys' fees and nontaxable costs. Consistent with the Sixth Circuit's mandate, the Magistrate Judge has considered the *Fogerty* factors in this matter. As everyone recognizes, no one factor is determinative and the Court may consider factors not listed by the *Fogerty* court. *WB Music* at 592.

    **1. Objectively Unreasonable.** The Magistrate Judge believes that Bridgeport pursued this appeal without any real chance of success. The Magistrate Judge's recommendation had been approved by the District Judge over Bridgeport's objections and, with all due respect, the Magistrate Judge believes that a reading of the report and recommendation would have disclosed that the District Court had carefully considered the remand of the Sixth Circuit and the factors in the case, and that they were substantially different from the original single factor which the Sixth Circuit had found wanting.

    The Magistrate Judge is somewhat bothered by the rather churlish Footnote 1 (Docket Entry 525, p. 4), which states, "In a stroke of bad luck for Bridgeport, Judge Gilman of the Sixth Circuit, who dissented when the Sixth Circuit vacated the original fee award, *see Rhyme Syndicate*, 376 F.3d at 629, was on the panel of the Court deciding the fee award on this appeal."

3

If Bridgeport truly felt that they had no chance with Judge Gilman, they should have realized it would not be a stroke of bad luck, but simply a continuation of the fact that Judge Gilman has sat on the majority, if not all, of the cases involving Bridgeport. From a quick review of the various *Bridgeport* cases cited in the briefs, it appears to the Magistrate Judge that Judge Gilman, in fact, has sat on all the *Bridgeport* cases. It should also be noted that Judge Gilman has, in some of the cases, reversed the District Court for failing to give adequate explanation of the District Court's opinion in either awarding or denying attorneys' fees.

From the Magistrate Judge's review of the brief in the Sixth Circuit in this matter, it appears that Bridgeport, as pointed out by the Sixth Circuit in the oral argument, continued to repeat over 50 pages the same argument time after time. Repeating an argument does not necessarily make it any better. The Defendants, of course, not willing to let a hot horseshoe lay undisturbed, responded with a 50-page brief of their own.

The Magistrate Judge concludes that Bridgeport's chances of success on the appeal on this very limited single issue were slight. Accordingly, this factor favors the Defendants.

**2. Motivation.** Motivation is always difficult to discern since there is no way to x-ray the minds of the parties. From dealing with the parties in this matter since 2001, the

4

Magistrate Judge is of the opinion that, in general, the attorneys and clients on both sides of this particular branch of the litigation have been extremely combative and have made this litigation more difficult and expensive than necessary.  That being said, the Magistrate Judge must note that it appears that on May 7, 2008, UPIP made a settlement proposal to Bridgeport, offering to take a reduction in its fees.  Bridgeport initially responded that the Sixth Circuit had already denied fees.  However, Bridgeport, in briefing this matter, abandoned any claim that the Sixth Circuit denied the claim for fees and costs.

Unfortunately, Bridgeport did not respond with a counter-offer in an effort to settle this particular fee dispute.  Whether the parties could have reached an agreement will never be known, but it does appear to the Magistrate Judge that Bridgeport should at least have responded with a counter-offer to the Defendants' offer to settle the matter at a modest discount (Mayer declaration, Docket Entry 519).[1]

The Defendants in this matter won a decision at the District Court level for a significant amount of attorneys' fees and costs.  Had they not responded to Bridgeport's appeal, they would, of course, have lost that award.  Any monies they had to

---

[1] The Magistrate would note that both sides filed pleadings from this case and another case which already had a footer on them.  This resulted in the footer for this particular set of motions over-printed the existing footer, with the end result being totally illegible.  The parties should work with the Clerk's office to learn how to remove the prior footers and avoid this problem in the future.

spend defending the award, unless they are awarded attorneys' fees, reduces its value.  Bridgeport, in its brief (Docket Entry 525, pp. 8-9), contends that there was no improper motive, but rather a legitimate effort on their part to avoid paying what they consider improper fees and costs.

Since Bridgeport in this brief admits that even if they were successful they would not have recovered their fees and costs on the appeal, the Magistrate Judge is, again, somewhat at a loss to understand why they would have pressed the appeal.  Bridgeport's cost in pursuing the appeal must have been substantial, with no hope of recovering them even if they were successful.  When one considers their cost of pursuing the appeal and the very real risk that they will not prevail and would then have additional costs imposed upon them, the Magistrate Judge simply has to scratch his head as to why they would pursue this appeal.  The Magistrate Judge's overall opinion is that it was sheer stubborness and an unwillingness to recognize that they were continuing to throw good money after bad.  The first rule of holes is that if you find yourself in one – quit digging. This factor slightly favors UPIP.

**3. Compensation and Deterrence.**  UPIP had received an award of $82,750.29, and they contend it was entirely reasonable for them to protect that award by responding to the Bridgeport appeal.  Had the Defendant simply rolled over when the Plaintiff appealed an adverse judgment, there would be little benefit to

6

securing the award. The Magistrate Judge believes that an award of fees for defending the initial fee award in this case is appropriate. As the Seventh Circuit said in *Gorenstein Enterprises v. Quality Care USA, Inc.*, 874, F.2d 431, 438 (7th Cir. 1989), "There is a time to fight and a time to quit," or, for a more local flavor from Kenny Rogers, "You have to know when to hold them and know when to fold them." In this case, Bridgeport's continued appeal in this case was unnecessary, and in order to preserve the attorneys' fees they originally won, the Defendants are entitled to be compensated for fees reasonably expended in a successful effort to preserve their award. This factor favors UPIP.

    **4. Furtherance of the Goal of the Copyright Act.** UPIP correctly points out that this appeal did not directly involve any aspect of the Copyright Act. It was simply over the attorneys' fees and, as such, the Magistrate Judge believes that since the original award of attorneys' fees was reasonable, it does further the interest of justice and the Copyright Act in this matter to allow the Defendants reasonable compensation to protect their award. The awarding of attorneys' fees in these cases may at some point in the future encourage all parties to be less aggressive and more realistic in their pursuit of these cases. This factor again favors UPIP.

    Although the Magistrate Judge recommends against Bridgeport in this matter, the Magistrate Judge by no means totally

7

exonerates the Defendants from being overly aggressive. In this particular case, the Defendants' over-aggressiveness will be addressed by substantial reductions of the amounts claimed.

Having now concluded that the Defendants are entitled to attorneys' fees and nontaxable costs, the Magistrate Judge must turn to the issue of what are reasonable attorneys' fees and costs. The Magistrate Judge has recently issued a report and recommendation, which has been adopted by the District Judge in a companion case involving the same set of attorneys. *Bridgeport Music v. Rondor Music*, 3-01-1150 (Docket Entry 168). In that report and recommendation, the Magistrate Judge considered the various factors relevant in determining a lodestar amount as set forth by the Sixth Circuit in *Paschal v. Flagstar Bank*, 295 F.3d 565 (6th Cir. 2002). A discussion of those factors was set out in that Report and Recommendation at pages 7-9. In that matter, the Magistrate Judge concluded that local rates, rather than Los Angeles rates, were appropriate. That reasoning is fully applicable in this matter as well.

The Magistrate Judge again concludes that the customary fees in the Nashville area are appropriate. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000). The Magistrate Judge would note that in the *Adcock* case, the court did allow some of the out-of-district attorneys to use their Washington, D.C., rates, rather than Knoxville, Tennessee, rates because the

8

defendants forced the plaintiff to take depositions in Washington, D.C., and, in effect, to use Washington counsel. There are no such considerations in this case. While the Defendants' use of California counsel was reasonable, it was not required. The Magistrate Judge believes that, as set out in *Adcock*, the reasonable rate for cases actually litigated here is the local rate. Accordingly, the Magistrate Judge will apply Nashville rates to the fee application.

The work in this matter was performed in 2007 and 2008. Unfortunately, from the Magistrate Judge's perspective, although Mr. Mayer provides an excellent discussion of the Los Angeles rates for his firm, there is no information concerning the Nashville rates. Mr. Kirkpatrick, in the *Rondor Music* case, provided an affidavit concerning Nashville rates and indicated that his rate had been $300 since January 1, 2004 (Docket Entry 151, Case 3:01-CV-1150). However, he was not addressing any work actually done in 2007 or 2008.

Bridgeport, in it's memorandum (Docket Entry 525, p. 14), points out that the Magistrate Judge, in the case cited above, recently found the market rate in Nashville for senior attorneys to be $350 per hour, associates' rates to be between $238.50 and $274.50, and paralegals to be at the rate of $100 per hour. They agree that these rates are reasonable for the Nashville area. Accordingly, the Magistrate Judge will apply a rate of $350 per

9

hour for Mr. Frackmam and Mr. Kirkpatrick, a rate of $300 per hour for Mr. Mayer, a rate of $250 per hour for associates, and a rate of $100 per hour for paralegals.

The cost for pursuing this appeal is a matter of concern. The Magistrate Judge has considerable difficulty understanding how a one-issue appeal that the Defendants argue had no real merit costs approximately $54,000, and how preparing a fee application costs an additional $11,000.

As an Assistant United States Attorney and United States Attorney from 1971 to 1991, the Magistrate Judge simply cannot understand how such a straightforward appeal can consume so much time. During that time the undersigned wrote and argued close to 200 cases in the Sixth Circuit. With all due respect, this is an appeal that should have been written in 40 hours maximum by Mr. Mayer and reviewed and argued by Mr. Frackman in an additional 24 hours.

Likewise, the preparation of a fee application should not have taken more than eight hours by an attorney, with the paperwork as to billing being prepared by a paralegal in an additional eight hours. If good billing records are kept, there should be very little difficulty in preparing a succinct resuscitation of the hours spent and the resulting fees. Part of the difficulty in preparing the fee application appears to be that the Los Angeles attorneys have not kept records broken out for this particular case

10

and had to go back and attempt to apportion fees at a later date. Bridgeport should not be stuck with their bookkeeping problem. Bridgeport in their brief complains that in some cases they did not reduce work on multiple cases by 50%. However, Bridgeport does not note that in a number of entries, Mr. Mayer reduced the work by well over half. The Magistrate Judge does not question the effort of the Defendants' attorneys to apportion their work, although their billing records do make it more difficult for the Magistrate Judge to review what time was reasonably spent in the matter. The duty to show the work is reasonable rests with the Defendant.

The Magistrate Judge would note that Mr. Frackman claimed 7.6 hours for travel to Cincinnati, preparation for Court of Appeals argument, and participation in a telephone conference on January 28, 2008, as well as an additional 8.9 hours on January 29th for preparation for Court of Appeals argument and return to Los Angeles, review, and for sending email (Docket Entry 519-8).

It does not appear that the Sixth Circuit has ruled definitively on whether an attorney can bill a professional rate for time traveling to and from court. *See Ford Motor Company v. Lloyd Design Corporation*, 2002 LEXIS 17024 (E.D. Mich. 2002). A copy of this opinion is also attached to Bridgeport's memorandum (Docket Entry 525-6). The District Judge there noted that the Sixth Circuit had not ruled that travel time is compensable at the applicant's professional rate, particularly when there was no

11

showing that work was done on the case during the travel time. In this case, the justification for this entry (Docket Entry 519-8) does not indicate that legal work was performed while traveling. Certainly, it is hard to imagine that work on this case was done on the return to Los Angeles.

In calculating the amounts above, the Magistrate Judge has included eight hours for preparation and argument, but has not otherwise allowed attorney time for travel to and from Los Angeles.

After a review of this entire matter, the Magistrate Judge recommends an award for attorneys' fees in this matter, not including an award for the preparation of the application, in the amount of $22,000. This is broken out by allowing Ms. Mayer 40 hours at $300 per hour, for a total of $12,000; 24 hours for Mr. Frackman at $350 dollars, for a total of $8,400; 16 hours of paralegal work at $100 per hour for a total of $1,600.

Bridgeport further complains about the cost of the airplane ticket to and from Los Angeles and Cincinnati. Generally speaking, the Magistrate Judge would not be inclined to approve first class airfare absent a showing for need to work on the flight. Unfortunately, Bridgeport does not provide any indication as to what lesser rates would have been available for various classes of travel. The Magistrate Judge did a quick search of airfares for 30-day advanced purchase tickets for discounted, refundable, round trip tickets, in coach class and first class.

12

Current rates for August travel from LA are: Coach $1,699, first class $1,959. There is also not that much difference in price on Delta, which has direct service to Cincinnati. If you were to use a local rate, the trip from Nashville to Cincinnati in Delta coach would cost about $937, with first class at a shocking $3,256.[2] As such, the Magistrate Judge will not reduce this particular item. It is quite likely that at least on the trip to Cincinnati, Mr. Frackman would have used the additional space to work on his argument. The Magistrate Judge would note that the Defendants did not claim any expense for transportation to and from the airport or for lodging or meals.

The Magistrate Judge finds no reason to disturb the use of a courier for delivering briefs and, accordingly, will allow the nonreimbursable fees for airfare and courier service as requested in the amount of $1,878.48.

The final issue is the amount to be allowed for preparation of the fee application itself. Concerning the amount of $11,097 requested for preparation of the fee application, the Magistrate Judge has recently prepared a recommendation on that issue, which was subsequently adopted by the District Judge in *Bridgeport v. Rondor Music*, 3-01-CV-1150 (Docket Entry 168, p. 17-19).

---

[2]The rationale for how airlines set their fares is best left to a Ouija Board.

13

The Defendants complain that this amount is insufficient and that the 3% limitation is only a guideline. Guideline or rule, the Magistrate Judge is not persuaded that a higher amount should be awarded. The Sixth Circuit has established a "three percent rule." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 620-621 (6th Cir. 2007). While the Magistrate Judge has considered the Defendants' concern that 3% is simply inadequate to compensate them for the time spent preparing a fee application, for the reasons stated by the Magistrate Judge in *Rondor Music* cited above, the Magistrate Judge believes that the 3% rule/guideline has a benefit in preventing fee applications from becoming the tail that wags the dog. In this case, the requested fee application is 20% of the amount claimed for the actual appeal itself. That is simply an unreasonable amount. If the 3% rule/guideline is to be abolished, it is for the Sixth Circuit to do it--not the Magistrate Judge. Three percent of $22,000 is $660, thus making a total award of $22,660. If for some reason the 3% rule/guideline is not adopted, the Magistrate Judge would, nevertheless, not recommend an amount in excess of $2,500. Most of the work could have been accomplished by a paralegal with minimal attorney time. Further, much of the actual legal research would have been available from the first appeal in this matter, as well as the attorney fee application prepared in the *Rondor Music* matter.

14

Case 3:01-cv-00706   Document 526   Filed 07/07/08   Page 14 of 15 PageID #: 794

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that the Defendants be awarded attorneys' fees in the amount of $22,660, and unreimbursable costs in the sum of $1,878.48.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has 10 days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have 10 days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within 10 days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

**ENTERED** this 8th day of July, 2008.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge